**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000412**
**12-JUN-2019**
**07:55 AM**

NO. CAAP-18-0000412

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
WILLIAM TERRY EVANS, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-17-0000726(4))


SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Reifurth and Hiraoka, JJ.)

Defendant-Appellant William Terry Evans (**Evans**) appeals from the Judgment (**Judgment**) entered by the Circuit Court of the Second Circuit (**trial court**)[1] on April 20, 2018.  Evans was convicted of Assault in the Third Degree.[2]  He contends that he received ineffective assistance of counsel.  For the reasons explained below, we affirm the Judgment without prejudice to a subsequent proceeding by Evans under Hawai'i Rules of Penal Procedure (**HRPP**) Rule 40 (eff. 2006).

> The standard for determining the adequacy of counsel's
> representation is whether, viewed as a whole, the assistance
> provided is within the range of competence demanded of
> attorneys in criminal cases.  Counsel's assistance need not

---

[1]     The Honorable Richard T. Bissen, Jr. presided.

[2]     Hawaii Revised Statutes (**HRS**) § 707-712 (2014) provides, in relevant part:

> (1)     A person commits the offense of assault in the third
> degree if the person:
>
> > (a)     Intentionally, knowingly, or recklessly causes
> > bodily injury to another person[.]

> be errorless nor will it be judged ineffective solely by hindsight.
>
> The burden of establishing ineffective assistance of counsel rests upon the appellant. [The] burden is twofold: First, the appellant must establish specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence. Second, the appellant must establish that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. [A]n appellant [who] successfully meets these burdens . . . will have proven the denial of assistance within the range of competence demanded of attorneys in criminal cases.
>
> A finding of ineffective assistance of counsel mandates reversal of a defendant's conviction.

State v. Antone, 62 Haw. 346, 348-49, 615 P.2d 101, 104-05 (1980) (cleaned up).[3]

In this case Evans was charged with assaulting Solomon Kapule (**Kapule**) on July 30, 2017.[4] The State filed a motion in limine requesting, among other things, "An order precluding the defense from introducing any testimonial or documentary evidence relating to other crimes, wrongs or acts on the part of any of the State's witnesses unless offered in compliance with HRE Rule[] 404(b)[.]"[5] The trial court granted the motion. Evans's trial attorney did not provide the State with any Rule 404(b) information.

---

[3] "Cleaned up" is a relatively new parenthetical designed to tell readers that extraneous material (such as internal brackets, ellipses, quotation marks, citations, footnote reference numbers, and changes in capitalization) has been removed from a quotation for readability, and that none of it matters for understanding the quotation or evaluating its weight. See Metzler, Jack, Cleaning Up Quotations, 18 J. App. Prac. & Process 143, 147, 154 (2017). As of March 31, 2018, "(cleaned up)" has appeared in more than 150 judicial opinions, both state and federal. Id. at 160; see, e.g., United States v. Steward, 880 F.3d 983, 986 n.3 (8th Cir. 2017); United States v. Reyes, 866 F.3d 316, 321 (5th Cir. 2017); Smith v. Kentucky, 520 S.W.3d 340, 354 (Ky. 2017).

[4] Evans was also charged with third degree promoting a detrimental drug and harassment, but the State dismissed those charges before trial.

[5] Hawaii Rules of Evidence (**HRE**) Rule 404 (2016) provides, in relevant part:

> (b) Other crimes, wrongs, or acts. . . . . In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

During presentation of the State's case, the jury heard testimony from Kapule.  He testified that he was 58 years old. He said he had a stroke several years before and used a cane to balance himself to keep from falling.  He was walking into Foodland to shop for groceries.  His cane was in his shopping cart.  He saw Evans walking out of Foodland.  Evans was "mumbling something about something."  Evans "looked mad."  They passed each other.  Kapule "didn't say nothing" to Evans.  Kapule testified:

> A.    So then he -- he came back in behind me on the right side of me.
>
> Q.    Okay.  And then what happened after he came back on the right side of you?
>
> A.    And all I saw was a fist that came into my mouth.

Kapule said he hadn't expected the punch and was stunned.  He testified that Evans then walked out of the store.  Kapule had a cut lip.

The State also called Foodland assistant manager John Cabbat (**Cabbat**) as a witness.  Customers had alerted him to an argument happening in front of the store.  He went to the front and saw Kapule and Evans having an argument.  He saw that Kapule had "a busted lip" that was "slightly bleeding."  Kapule and Evans both appeared to be angry and were yelling at each other. Evans "took couple swings (inaudible) hit [Kapule.]"  Kapule was poking Evans with his cane to keep Evans away.  Cabbat separated the men and called 911.

Maui County Police Department officer Vance Vickers responded.  Officer Vickers testified that he found Kapule standing near Foodland.  Kapule told him that Evans approached him from the rear and punched him in the face.  Kapule had a small cut to the upper inner side of his lip.  Officer Vickers located Evans in the Foodland parking lot.  Evans did not appear to be injured and did not complain of any injury.

After the State rested, Evans testified on his own behalf. He said he was 73 years old, disabled, had back problems, had a heart attack, and has a defibrillator in his chest. He had known Kapule for a couple of years. As he was walking to Foodland he heard Kapule say "don't worry, Terry,[6] God still loves you, or Jesus still loves you." Evans "Cussed [Kapule] out." (He was not asked to explain why he did that.) Evans went into Foodland. Kapule came up behind Evans with a shopping cart. The cart came within two inches of Evans. Evans heard Kapule laugh. Evans testified:

> I was afraid he was going to hit me over the head with his cane. And I turned around and hit him with my left hand in the mouth.

Evans stepped back and went outside. Cabbat came to get him and they went back to where Kapule was in Foodland. Evans testified that Kapule stabbed him twice in the chest with his cane. Cabbat made Kapule step away from Evans. Evans left Foodland. A police officer stopped him and arrested him.

On cross-examination by the deputy prosecuting attorney (**DPA**) Evans testified:

> [DPA]: . . . So [Kapule is] on the side of you, behind you?
>
> A.     Yes, ma'am.
>
> Q.     And he's laughing in your ear?
>
> A.     Correct.
>
> Q.     And then you tell us at this point it was -- at this point you decide to turn and hit [Kapule] in the mouth?
>
> A.     Right. Before he could hit me with his cane. Which he's done (inaudible) times.
>
> Q.     And you -- you struck him right after you heard the laughter in your ear?
>
> A.     Yes, ma'am.

---

[6]     Evans testified that his middle name is Terrel but "Everyone calls me Terry pretty much."

Q.     Okay.  And he was close to you?

A.     Yes, ma'am.

Q.     Ah, standing next to you, behind you?

A.     Correct.

Q.     So you didn't see where his hands were?  If he's behind you?

A.     I believe they were on the cart.  Both --

Q.     Both hands were on the cart?

A.     I believe so.  I'm not sure.

Q.     You mentioned [Kapule] by name.  So you know him?

A.     Yes, ma'am.

Q.     You know that, um, he walks with a cane.  You mentioned the cane.

A.     He hits people with it.

The trial court allowed jurors to submit written questions for witnesses to the court.  After Evans testified, a juror submitted the question:

Has Soloman [sic] hit John [sic] in the past?  Has John [sic] hit Soloman [sic] in the past?

The trial court, the DPA, and Evans's trial attorney were confused about who "John" was.  The trial court stated (at sidebar):

THE COURT:  John is who?

[DPA]:      The store manager.  I guess I would object on relevance, since that's not the parties.  (Inaudible).

[DEFENSE COUNSEL]:  Um, I mean I'll just defer to the Court at this point.

THE COURT:  Well, here's the thing, while he was testifying he said two things that neither party said anything about.

He said, he's done it in the past.  And he said, other people were there.  And obviously he's trying to slide that in there.  Ah, I mean I already made my rulings about any past conduct because that was not brought before the Court. And so I don't know if this has anything to do with that.

What is Mr. Kapule's first name?  Soloman [sic].

[DPA]:      Soloman [sic].  And John is Cabbat.

THE COURT:  I know who John is.  Who is this?  What is his name?

[DPA]:      William Terry or Terrel Evans.

THE COURT:  I have no idea if the person has the names mixed up or not.

[DPA]:      I suspect.

THE COURT:  Even if it were the correct names I wouldn't allow it.  So you both agree I should not ask this question?

[DPA]:      Yes.

No response from Evans's trial attorney was noted on the transcript of proceedings.  The trial court did not read the juror's question to Evans.  The defense rested.

The trial court read the instructions to the jury.  The instruction on self-defense stated:

> Self-defense is a defense to the charge of Assault in the Third Degree.  The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified.  If the prosecution does not meet its burden then you must find the defendant not guilty.
>
> The use of force upon or toward another person is justified if the defendant reasonably believes that force is immediately necessary to protect himself on the present occasion against the use of unlawful force by the other person.  The reasonableness of the defendant's belief that the use of protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be.  The defendant may estimate the necessity for the use of force under the circumstances as he reasonably believes them to be when the force is used, without retreating, doing any other act that he has no legal duty to do or abstaining from any lawful action.
>
> "Force" means any bodily impact, restraint or confinement, or the threat thereof.
>
> "Bodily injury" means physical pain, illness, or any impairment of physical condition.
>
> Self-defense is not available for the offense of Assault in the Third Degree as to the reckless state of mind if the prosecution proves that:

>       (1)    the defendant was reckless in believing that he was justified in using force against the other person; or
>
>       (2)    the defendant was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justifiability of his use of force against the other person.

The jury found Evans guilty of Assault in the Third Degree. This appeal followed.

      The error specified by Evans is his trial attorney's failure to disclose "evidence of prior assaultive conduct against Mr. Evans by [Kapule]" as required by HRE Rule 404(b) (and the trial court's order granting the State's motion in limine). However, Evans has not provided any information "of the date, location, and general nature of any such evidence" he contends his attorney should have disclosed and used at trial. See HRE Rule 404(b). Without this information in the record — i.e., whether Kapule had a modus operandi of approaching Evans from behind, saying "don't worry, Terry, God still loves you, or Jesus still loves you[,]" laughing in his ear, then hitting him with his cane — we are unable to determine whether the alleged error "resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Antone, 62 Haw. at 348-49, 615 P.2d at 104 (citations omitted).

> [W]here the record on appeal is insufficient to demonstrate ineffective assistance of counsel, but where: (1) the defendant alleges facts that if proven would entitle him or her to relief, and (2) the claim is not patently frivolous and without trace of support in the record, the appellate court may affirm defendant's conviction without prejudice to a subsequent Rule 40 petition on the ineffective assistance of counsel claim.

State v. Silva, 75 Haw. 419, 439, 864 P.2d 583, 592-93 (1993) (footnote omitted). Accordingly, we affirm the Judgment without prejudice to a subsequent HRPP Rule 40 petition by Evans on his claim of ineffective assistance of counsel. We note that where ineffectiveness of counsel is the basis for a Rule 40 petition,

the defendant must serve written notice of the hearing on counsel whose assistance has been challenged as ineffective, and the counsel shall be given an opportunity to be heard.  See HRPP Rule 40(f).

DATED:  Honolulu, Hawaiʻi, June 12, 2019.

On the briefs:

John F. Parker,
for Defendant-Appellant.

Renee Ishikawa Delizo,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge